CLEARWATER CONSTRUCTORS, INC., Appellant,

v.

Irma GUTIERREZ, Appellee.

No. 16559.

Court of Civil Appeals of Texas, San Antonio.

July 22, 1981.

Rehearing Denied Jan. 11, 1982.

H. David Peeples, Joe Meador, San Antonio, for appellant.

Warren Weir, San Antonio, for appellee.

## OPINION

CADENA, Chief Justice.

Defendant, Clearwater Constructors, Inc., appeals from an order of the district court of Bexar County overruling its plea of privilege in a case in which plaintiff, Irma Gutierrez, seeks to recover for loss of consortium because of the death of her husband, Juan Gutierrez, resulting from an on-the-job injury which he sustained in Bexar County.

Plaintiff alleged that her husband's death was proximately caused by the negligence and gross negligence of his employer, Clearwater. She also based her claim on the theory that she was the third party beneficiary to a contract between Clearwater and the United States Army Corps of Engineers which contained provisions requiring Clearwater to comply with certain "safe construction practices and techniques which were incorporated as part of that contract and which were prescribed by the Corps of Engineers." Plaintiff alleged that Clearwater's failure to comply with such contractual provisions resulted in her husband being exposed to the danger which caused his death.

In her third amended controverting affidavit, which properly incorporated the allegations in her third amended original petition, plaintiff asserted that venue was properly laid in Bexar County under subdivisions 4, 5, 9a, 23 and 27 of the general venue statute, Article 1995, Tex.Rev.Civ. Stat.Ann. (Vernon 1964).

The trial court made the following findings of fact and conclusions of law which are pertinent:

a. Certain specified conduct on the part of Clearwater constituted negligence which proximately caused the injury and death of plaintiff's husband. Although the instrument containing the findings of fact originally embodied a finding that Clearwater's conduct constituted gross negligence, such portion was deleted by the trial court.

b. Clearwater is a foreign corporation and had an agent or representative in Bexar County, Texas, at the time of the death of plaintiff's husband and the filing of this suit.

c. The contract between Clearwater and the Corps of Engineers required that Clearwater make periodic inspections of the construction site to assure "that the conduct of the job by" Clearwater "would be safe and would include a minimum of accidents and injuries to employees." All of Clearwater's employees and their spouses and dependents were third party beneficiaries of this contract.

d. The contract between Clearwater and the Corps of Engineers was performable in Bexar County and the negligence of Clearwater occurred in Bexar County.

e. Because of the death of her husband, plaintiff suffered loss of consortium.

Our Worker's Compensation Act, Article 8306, § 3, Tex.Rev.Civ.Stat.Ann. (Vernon 1967), provides that an employee of a subscriber shall have no right of action against his employer for damages for personal injuries, "and the representatives and beneficiaries of deceased employees shall have no right of action against such subscribing employer . . . for damages for injuries resulting in death, but such employees and their representatives and beneficiaries shall look for compensation solely to the association, as the same is hereinafter provided for."

In *Reed Tool Company v. Copelin*, 610 S.W.2d 736, 739 (Tex.1980), our Supreme Court held that section 3 of Article 8306 precluded the wife of an employee from maintaining a cause of action for loss of consortium resulting from the employer's negligence or gross negligence. Since plaintiff failed to prove a cause of action

based on negligence, subdivision 9a does not authorize the maintenance of this suit in Bexar County. *Goodpasture, Inc. v. Hosch,* 568 S.W.2d 662, 664 (Tex.Civ.App.—Houston [14th Dist.] 1978, no writ).

Under Subdivision 27, suit may be filed against a foreign corporation in any county in which the cause of action, "or a part thereof," arose, or in any county where such corporation may have an agency or representative.

■ It is clear that, under *Copelin,* plaintiff cannot maintain venue in Bexar County under that portion of subdivision 27 which allows a foreign corporation to be sued in any county in which a part of plaintiff's cause of action arose on the theory that she proved a cause of action for negligence. However, she insists that as a third party beneficiary to the contract between Clearwater and the Corps of Engineers she proved a cause of action for the breach, in Bexar County, of Clearwater's contractual duty concerning "safe construction techniques and practices."

Although there has been general acceptance of the third party beneficiary doctrine as an exception to the rule that a contract may be enforced only by the parties to the contract, the courts have had difficulty in formulating precise rules useful in determining when a third person has a sufficient interest in the performance of a contract entered into by others to allow him to enforce the provisions of the contract. *See,* generally, Note, 57 Colum.L.Rev. 406 (1957).

Perhaps the most widely used "test" is that a person who wishes to enforce a contract to which he is not a party must show that the contract was intended for his benefit in either all or part of its contemplated performance. Some courts, including those of this state, add that if there is doubt concerning such intent the doubt will be resolved against the existence of the required intent, since parties are presumed to contract for themselves. *O'Boyle v. Dubose-Killeen Properties, Inc.,* 430 S.W.2d 273, 279–80 (Tex.Civ.App.—Dallas 1968, writ ref'd n. r. e.).

At best, intent has furnished a somewhat confusing basis for decision. The courts have been unable to agree on whether the controlling intent is that of the promisor, the promisee or the mutual intent of the contracting parties. Note, 45 Va.L.Rev. 1226, 1228 (1959). In *Banker v. Breaux,* 133 Tex. 183, 128 S.W.2d 23, 24 (1939), our highest tribunal said that a third party cannot enforce a contract to which he is not a party unless it is "shown that the contracting parties intended to make same for his benefit." In *Casey v. Watts,* 130 S.W.2d 396, 398 (Tex.Civ.App.—Waco 1939, writ dism'd judgmt cor.), the Court said that the third party must establish that the contracting parties "intended to make the contractual provision in question *primarily* for the benefit of" the third party and that the promisor "had promised to pay the indebtedness to" the third party. (Emphasis added.)

Attempts to avoid the difficulties inherent in the intent test by distinguishing on the basis of direct and remote benefit to the third party are of little or no help. No decision has given a meaningful definition of "direct benefit" and the suggested distinction is deprived of substance by holdings that a "direct" beneficiary is one who is contemplated, intended or recognized as such by the parties to the contract. *Johnson Farm Equipment Company v. Cook,* 230 F.2d 119 (8th Cir. 1956).

Attempts to make the intention test more manageable by distinguishing between intent and purpose furnish no significant guidance. Under this approach, "intention" refers to the necessary effect of the contract, while "purpose" refers to the motives attributable to the contracting parties. Application of the distinction results in holdings that if the terms of the contract necessarily require the promisor to confer a direct benefit upon the third party there is present the required "intention" to benefit such third party. *Vikingstad v. Baggott,* 46 Wash.2d 494, 282 P.2d 824 (1955). This intention is decisive, and it is immaterial that the "purpose" of the promisee may have been solely to gain some benefit or immunity for himself rather than to "bene-

fit" the third party. *Silver King Coalition Mines Company v. Silver King Coalition Mining Company,* 204 F. 166 (8th Cir. 1913). The Texas courts apparently reject the distinction between intention and purpose or else require that the terms of the contract disclose both an intent and purpose to benefit the third party. In *Citizens National Bank in Abilene v. Texas & P. Ry. Co.,* 136 Tex. 333, 150 S.W.2d 1003, 1006 (1941), the Court said that it is "the intention and purpose of the contracting parties, as disclosed by the instrument, which should control."

It is often said that persons who will benefit from the performance of a contract to which they are not parties can be classified as (1) donee beneficiaries, (2) creditor beneficiaries and (3) incidental beneficiaries, and that only donee beneficiaries and creditor beneficiaries may sue for breach of the contract. *Republic National Bank of Dallas v. National Bankers Life Insurance Company,* 427 S.W.2d 76, 80 (Tex.Civ.App. —Dallas 1968, writ ref'd n. r. e.). Even if it be assumed that the distinction between creditor beneficiaries and donee beneficiaries is worth preserving, the tripartite classification mentioned in *Republic National Bank,* based on section 133 of the original Restatement of Contracts (1932), is of minimum help in solving problems, since it merely tells us that an incidental beneficiary is one who cannot enforce the contract of others without furnishing guidelines for determining which persons claiming to be beneficiaries of the contract of others have rights and which do not.

The difficulties in applying the intent test are aggravated when the government is one of the contracting parties, since the relevant intent which must be ascertained is no longer that of a single individual or entity, but rather that of an amalgam of legislative bodies, administrative agencies and government officials, creating the possibility of the existence of differing objectives and expectations with regard to the contract.

Whenever the government contracts, we must assume that the intent is to promote the general welfare or to benefit its citizens. In this sense, government acts as the representative of the public and with the intent to benefit the public, but it cannot always be said that government intends to create a right of action in any citizen who is injured by the promisor's breach of his promise to the government. *See House v. Houston Waterworks Co.,* 88 Tex. 233, 31 S.W. 179 (1895), where it was held that a water company was not liable to a property owner whose building was destroyed by fire because of the water company's failure to furnish to a municipality water for fire extinguishment as required by the water company's contract with the municipality.

In this case, Clearwater bound itself to take proper safety and health precautions "to protect the work, the workers, the public and the property of others." There was also an obligation to provide safety controls "for protection of the life and health of employees and other persons."

No great difficulty is encountered in concluding that the employees of Clearwater are third party beneficiaries of the promises concerning safety. It can also be persuasively argued that other persons who sustained physical injury or property damage because of Clearwater's operations were intended to be protected.

Those who contract with the government should not be exposed to unlimited liability for personal injury and property damage. As third parties asserting rights under a contract become more remote from the contracting parties, as their identities become less certain and their numbers increase, as they assert increasingly complex interests, and as the existence of a promise to render performance to them becomes more difficult to discover, reluctance to allow them to enforce the contract should increase. 4 A. L. Corbin, Contracts § 779G (1951).

Here plaintiff seeks to recover consequential damages which have no relation to the value of the promised performance.

There is relevant language in *House v. Houston Waterworks Company, supra.* "The plaintiff is not a party to or in privity with the contract. It was not expressly

made for his benefit. The [promisor] has not been guilty of any breach of duty that it owed the plaintiff apart from the contract, nor growing out of any relations between them created by or arising out of the contract; and it is clear that [the third party] cannot maintain this action ex delicto for the breach of the contract itself." 31 S.W. at 181.

It is not necessary to speculate whether the primary intent of the United States in inserting the safety provisions in the contract was to protect itself from liability under the Federal Tort Claims Act. We merely conclude that there is nothing in the language of the contract, in the surrounding circumstances, or in policies of the Federal Government to justify the conclusion that the parties to the contract intended to create in plaintiff a right against Clearwater over and above the rights vested in her under applicable compensation laws and rules of tort law.

Our conclusion that plaintiff proved no cause of action on a contractual duty theory compels the conclusion that she cannot maintain venue in Bexar County under subdivision 5(a) which provides that if a person has contracted to perform an obligation in a particular county which is expressly named in the written contract, suit by reason of such obligation may be brought in the county named in the contract. Under this exception plaintiff had the burden of proving the existence of a written contract and that the nonperformance of defendant's obligation under such contract "will vest in the plaintiff an enforceable claim." 1 R. McDonald, Texas Civil Practice § 4.11.3 (1981). Since she was not a party to the contract and cannot enforce it as a third party beneficiary, Clearwater's breach of the contract created no enforceable claim in plaintiff.

■ Under that portion of subdivision 27 which allows a foreign corporation to be sued in a county in which it maintained an agency or representative, proof of a cause of action against the foreign corporation is not required. 1 R. McDonald, Texas Civil Practice § 4.30.4 at p. 431, n.3 (1981).

■ We need only determine, insofar as the applicability of subdivision 27 is concerned, whether defendant had an agency or representative in Bexar County at the time the suit was filed or at the time of the hearing.

In *Milligan v. Southern Express, Inc.*, 151 Tex. 315, 250 S.W.2d 194, 198 (1952), the court, after commenting that the terms "agency" and "representative" were not used in the sense of responsibility of one person for the tortious conduct of another, continued:

> Rather ... the statute refers to a situation in which the business of the defendant is, in more or less regular and permanent form, actually conducted in the county of suit, or one in which a party possessing broad powers from the defendant resides in the county, the one instance being that of "agency" and the other of "representative."

Although *Milligan* was concerned with the meaning of "agency" and "representative" in subdivision 23, the terms have the same meaning in subdivision 27 as in subdivision 23. *Crosby v. Safeway Stores, Inc.*, 568 S.W.2d 412 (Tex.Civ.App.—Texarkana 1978, no writ).

Plaintiff insists that the evidence supports the finding that Clearwater had a representative in Bexar County because of the following testimony:

a. The contract between Clearwater and the Corps of Engineers required Clearwater to "have on the work [site] a competent superintendent ... with authority to act for" Clearwater.

b. John Stark, Clearwater's "job site superintendent" used a trailer at the job site as his office.

c. Clearwater employed a "project engineer" on the job.

The evidence does not indicate the nature of the duties of Stark or the project engineer. Despite the provision of the contract, there is no evidence that the job site superintendent or the project engineer possessed "broad powers from the defendant." In the absence of such evidence, it cannot be said

that plaintiff established the presence of anyone in Bexar County meeting the *Milligan* test concerning "broad power." *John B. May, Inc. v. Accu-Namics, Inc.*, 528 S.W.2d 898 (Tex.Civ.App.—Waco 1975, no writ); *Mid-Continent Life Insurance Company v. Huston*, 481 S.W.2d 943 (Tex.Civ. App.—Houston [1st Dist.] 1972, no writ).

Even if it be assumed that there was present in Bexar County a person possessing the required "broad powers," plaintiff failed to establish the applicability of the agency or representative portion of subdivision 27. In *Milligan*, the Supreme Court required that the representative not only possess broad powers, but that he be a resident in the county in which suit is filed. Plaintiff produced no evidence that Clearwater's "representative" on the job, whatever the nature and extent of his powers, resided in Bexar County.

The judgment of the trial court is reversed and the cause is remanded with directions that the suit be transferred to Travis County.