**W. D. JOHNSTON, Individually and d/b/a W. D. Johnston Mail Contractor, and Dee Jay Leasing Company, Inc., Appellant,**

v.

**HOUSTON GENERAL INSURANCE GROUP, Appellee.**

No. 2–81–040–CV.

Court of Appeals of Texas, Fort Worth.

July 15, 1982.

Scurlock, Binion, Brackett & Oldham, Inc., and Lloyd Scurlock, Fort Worth, for appellant.

Eyres & Kohn, and W. G. Eyres, Frank Edward Kohn, Dallas, for appellee.

Before MASSEY, C. J., and SPURLOCK and JORDAN, JJ.

## OPINION

MASSEY, Chief Justice.

Houston General Insurance Group of insurance companies brought suit to collect deficiency in insurance premiums allegedly the debt of defendants W. D. Johnston, Individually, d/b/a as W. D. Johnston Mail Contractor, and Dee Jay Leasing Company. Following jury trial judgment was rendered in favor of Houston General for the amount of indebtedness found by the verdict.

The jury also found reasonable attorney's fee for services of the Houston General attorney in the trial court to have been $7,130.00. By answers "none" the jury refused to find Houston General entitled to any additional attorney's fees should defendants take their appeal to this court or to the Supreme Court. Nevertheless the trial court allowed not only the reasonable attorney's fees as found by the jury, but also, in addition in the event of appeal, awarded $2,500.00 if taken to this court,

plus an additional $2,500.00 if taken to the Supreme Court.

We affirm save for the amounts awarded by judgment for attorney's fees for representation on appeal(s), with judgment reformed by their deletion. On oral presentation the Houston General attorneys agreed that our judgment might so provide in the event of affirmance save for this portion of the judgment.

Appellants do not deny contract(s) for insurance supplied. Their denial is of appropriate charges therefor. They argue that their intent was to make insurance contracts whereby Houston General would afford insurance coverages at standard premium rates rather than for the retrospective premium rates charged.

The judgment, based upon the verdict, was supported by evidence and there was no insufficiency in the evidence. The Houston General policies were delivered to appellants based upon the parties' agreement to contract. Therein was provided the appellants' obligation to pay—as their return consideration—advance deposits upon premiums, plus future amounts therefor in the form of calculable retrospective premiums. The parties' contracts were proved, prima facie, to have been bilateral contracts—with no attempt at any time by appellants to have them reformed. Even had they been unilateral contracts they were binding upon appellants because of their acceptance without any complaint. *Purcell v. Metropolitan Cas. Ins. Co. of New York*, 260 S.W.2d 134, 142 (Tex.Civ.App.— Fort Worth, 1953, no writ).

The substantial questions posed before the trial court, and on appeal before this court, were upon matters involved other than those above. These are to be resolved in light of Tex.R.Civ.P. 94, "Affirmative Defenses", which provides: "In pleading to a preceding pleading, a party shall set forth affirmatively ... estoppel, failure of consideration, ... waiver, and any other matter constituting an avoidance or affirmative defense."

The Houston General suit was founded upon written contract which it pleaded. There was no verified pleading by appellants that the consideration therefor (from Houston General) had failed in whole or in part. Tex.R.Civ.P. 93, "Certain Pleas to be Verified". (We will disregard this Rule as we proceed with the opinion.)

In response to the Houston General pleading, as a suit for debt, appellants pleaded the four-year statute of limitation as applied to a portion of the relief sought—with further plea, in the alternative, as follows: "Plaintiff has been guilty of laches and unconscionably delaying action ... and as a result thereof, such lapse of time (as) renders it difficult or impossible ... to ascertain the truth of the matters in controversy and to do justice between the parties."

There was delay in demand(s) upon appellants by Houston General because its settlements of some of the appellants' losses—insured by the policies—were delayed. The retrospective premiums prescribed to be the obligation of appellants were substantially the same as those set out in *Monarch Life Insurance Co. v. Trinity Industries, Inc.*, 495 S.W.2d 41, 43 (Tex.Civ.App.—Dallas, 1973, no writ). That was a summary judgment case. It is one upon which appellants place principal reliance to obtain reversal on the theory Houston General was guilty of laches.

■ While we hold that that attack upon the judgment cannot be deemed to have been included in appellants' plea of laches (presented as an alternative to the plea of limitations, and proper to be overruled for that reason), even if the case were different—and even if it should be considered as matter pleaded by appellants in avoidance or as an affirmative defense under Rule 94. In other words facts and circumstances controlling disposition in *Monarch Life*—reversible error are not present in the case before us.

In *Monarch Life* the insurance company was in identical position as was Houston General in the instant case, in that it sued to collect retrospective premiums. In *Monarch Life* there had been unreasonable delay in calculation of premiums for purposes of tests applicable to be made. The holding of the trial and appellate courts was that such calculation had been untimely made as established by the summary judgment evidence. Shown in the opinion is that the timely making of the final computation, based upon "incurred losses" valued as of the determined calculable date—and made "as soon as practicable" after such date—was held to have been a condition precedent to the insured's obligation to pay the retrospective premiums contracted.

The opinion in *Monarch Life* does not specify the state of the pleadings. We do not doubt, however, that the defendant policyholder had plead in avoidance or affirmative defenses as provided by Rule 94. The granting of summary judgment would obviously have required such pleading and also sufficient summary judgment evidence in support which established the defense as a matter of law. We do recognize that there had been a six-year delay in the *Monarch Life* case, and that such a delay could have been held excessive as a matter of law. Here, however, delay was not of such lengthy time that the same thing could be said in this case. An issue, or issues, of fact might have been but were not raised.

■ Here there was a failure of the appellants to raise any affirmative defense by proper pleading under Rule 94. Specifically, the question as written upon in *Monarch Life* was not raised. Furthermore, in the record before us there was no evidence by the appellants as in discharge of their burden of proof under the theory advanced on appeal, no finding by the jury made thereon as to any special issue submitted, no complaint of failure to submit an issue, and no specially requested issue.

Appellants' nearest approach to the theory discussed in *Monarch Life* are in answers to Special Issues Nos. 8A and 8B. By these the jury found that there was mistake by appellants belief that their premium would be calculated by a method different from that contracted, but that the mistake was

not of such consequence that to enforce the contract relative to retrospective premium would be unconscionable. Actually, we deem these issues and findings immaterial and without application to the issues raised on appeal. They would have no force and effect as ultimate issues no matter how the jury might have answered them.

■ If the appellants' laches plea had been aimed squarely at the delay in calculation of premium, as bearing upon a condition precedent to appellants' liability under the contractual provisions relative to retrospective premiums (it was not), determination would not be made as a matter of law (the situation in *Monarch Life* might constitute an exception to this rule). There would be necessity to submit special issues and to obtain favorable findings of fact by which appellants could claim benefit. It would be required of appellants to prove and have found that it was delay which had worked a disadvantage to them and had injured them. *Culver v. Pickens*, 142 Tex. 87, 176 S.W.2d 167, 170 (1943).

■ In this case injury was no part of the complaint of appellants. They plead none, proved none, nor sought inquiry of the jury of whether they had suffered a disadvantage. They could not be said to have sustained injury by the delay as a matter of law. The same could be said as applied to the question of whether the Houston General delay in making retrospective premium calculation, i.e. was the calculation made "as soon as practicable" following the time provided in the policy for the premium calculation (the calculable material date). The burden of proof to so show would have been one imposed upon appellants even had they plead waiver or failure of consideration.

The allowance of attorney's fees in the event of appeal was challenged by two of the appellants' points of error. There was refusal by the jury to allow any amount, with such refusal so stated by the "0" (zero) findings in response to special issues. The amount of reasonable attorney's fees is a question of fact when there is an entitlement to them as necessarily incurred expenses.

■ There is little question but that the zero findings by the jury was error. Even had a minimal amount been found, as, for example, $50.00, such finding would be so contrary to the evidence as to be clearly erroneous. Nevertheless the only thing an appellate court could do in such an instance would be to find reversible error and remand the case—or a portion—for retrial.

Houston General argues that its proof on appellate attorney's fees was without contradiction as to the amount of work which would be necessary in the event of appeal and as to the reasonable value thereof. The argument is not sound. What the evidence of Houston General authorized the jury to do was to find the attorney's fees up to the maximum amount *prima facie* proved by its uncontradicted evidence; not the lower limitation of what the jury could find. In other words the "floor" limit would be an amount which, if found, the appellate court would not hold erroneous as a finding contrary to the greater weight and preponderance of the evidence.

We sustain complaints of error relative to the attorney's fees allowed by the trial court despite refusal by the jury to make findings in support. The situation is not one where the trial court could, as substitute fact finder, make findings—contrary to the jury's finding—of the reasonable amount of attorney's fees.

A reversal would be in order, save for the announcement at oral presentation that the amounts so found by the court would be remitted by Houston General if necessary to obtain affirmance of the remainder of its judgment. (We do not understand such remittitur to be binding in the event appellants apply for a writ of error to the Supreme Court, but are binding should there be no application therefor.)

The judgment is reformed so as to delete therefrom the amount of attorney's fees conditionally awarded by the trial court in the event of appeal(s); as so reformed it is affirmed.

Costs of appeal are assessed against appellants.